Good morning, Your Honors. Peter Rafferciati, Pro Bono Appointee Council. On behalf of Petitioner Hu, may it please the Court. You're with Chapman University Clinic. Correct, Your Honor. Correct. I run the, or ran the Chapman Appellate Clinic. What are you doing now? Well, I'm moving to UC Irvine in the fall to run, to found and run the same clinic. What? To start and run the same clinic. I'll be doing it at UC Irvine's law school. At UC Irvine? Correct, Your Honor. So you like Chemerinsky better than Campbell? I think they're all great people, Your Honor. So do I. Both are friends. I was fortunate to, you know, study under Dean Chemerinsky. We've litigated cases over the years together, so it was a natural move. Who did you study under? Under Irwin Chemerinsky when I was at law school. Oh, okay. It's a natural move. Okay. Thank you, Your Honors. Your Honors, I think the issue is crystallized in this case. It's really a narrow one, and this Court should reverse, because when you look at the undisputed facts, which the government concedes, at least with respect to the testimony, or testifies to credibly, we have that concession. These undisputed facts line up and establish persecution on account of a political opinion. The BIA's contrary conclusion simply cannot be sustained. The BIA adopted, without really any explanation, the immigration judge's conclusion on the nexus issue. And as it stands before the Court right now, it appears we have two issues. One, was he even persecuted? That was never disputed below, but it's now disputed. And then the second one is the nexus issue. Did the BIA reach the persecution? It's a single incident. Well, it's two incidents on one day, Your Honor. Right, but I mean it arises out of one labor demonstration. Correct. So just to frame it, it seems to me that the one question is, in a communist country where the government is the employer, does an economic labor dispute become a political dispute because it is a government employer? And secondly, in a single incident, twice, you know, two beatings or whatever, but out of that labor dispute, does that constitute persecution for, you know, that would rise to the level of past persecution that that alone entitles one to asylum? So if you can address both of those, I'd appreciate it. I will do so, Your Honor. And I will take them in reverse order if that's all right. With respect to the persecution, the suffering that Mr. Hugh experienced does rise to the level of past persecution. Didn't the BIA decide that question? Your Honor, the BIA assumed he was persecuted and simply said there's no nexus, as did the immigration judge. No one ever disputed. Well, it didn't – I mean, you don't have to say that. You just say he didn't decide it. They just didn't decide it. They – they – it seems to me a better assumption here, the usual assumption, is that they only decided one thing necessary to – for him to lose, and that was there was no nexus, and they didn't address anything else. But you'd like it to be that they did decide, accept persecution, and now the only issue for you to win on has to be – would be, and we would not have to remand on persecution. Is that what you're trying to argue? I think that's correct, Your Honor. And there's myriad reasons for that. Fundamentally, the facts are undisputed, and it's a question of law. There's no necessary exercise of discretion by the political agency to decide whether the beatings and then the economic deprivation that was inflicted upon him by the police subsequently rises to the level of persecution. That's true. It ought to be true. Our case law tends to treat this as factual. I don't know why, but it does tend to. But, Your Honor, it's not factual here because the facts are undisputed. If – you may have someone who testifies credibly, but you still have a dispute and the fact is you can't discern what the record means, right? Here we don't have that. And the same case which we cited in our brief in the standard review section from this Court says it's a question of law. My statement understood that and was meant to say that even when that's the case, we tend to regard it as factual, even though I think it's not logical. So go ahead. Okay. So – I didn't know what I was talking about, but go ahead. No, no. Absolutely, Your Honor. And here what I think we look at then is this set of facts which even if the BIA didn't actually want to address the issue of persecution, it was teed up and the judge recounted those facts, the immigration judge, in her order as she discussed the testimony. And that then brings us to the nexus question. And the immigration judge here severely erred in taking the wrong departure point. The immigration judge looked to find a nexus between why Mr. Hugh was laid off and whether that firing of all the people at the factory was on account of one of the classes. That has nothing to do with this case. The issue was whether after he was laid off and didn't get the promised benefits that the government promised him and the workers, he then led a protest to decry the fact that we have been promised benefits. We haven't got them. He then was beaten, arrested, asked to confess and coerce, you know, subjected to a coerced confession for acting against the government and the party in demanding that the government give what the government wants. He was in prison for 11 days, wasn't he? He was in prison for 11 days.  Upon release, he was required to register with the police and show up every Tuesday. He wasn't allowed to travel or move freely. And the undisputed testimony, if you look at AR-53, he says he was persecuted, and that's the interrogation, the beating, the police registration, because he sought these benefits on behalf of all these workers. That is an imputed political opinion. The political opinion that the Chinese government imputed to him, it's an onion, you can peel many of the levels, every layer of this onion is an imputed political opinion, whether it's daring to stand up to the government and actually lead an organized protest, challenge the hegemony of, you know, the Chinese government down to, you know, shining a spotlight on the fact that they were promised benefits by the same people who absconded with all the money out of the factory to begin with, and then were cast aside. And when they dared say, where's our money, they got persecuted for that So I think on the, you know, on this question, the assertion that the immigration judge latched onto and the government still to this day seems to be asserting, which is... He was demonstrating because of what he believed was corruption. Correct, Your Honor. He was demonstrating the underlying corruption of having absconded with all the money and destroying the factory by these government officials. It's not Walmart or some private company like in America, as you know. It's a government factory. And so he leads a protest when he had been promised, as all the workers had, that don't worry, we'll take care of you, we'll give you benefits. You'll get money, you'll get unemployment. They never gave it. He sends letters to the government saying, where's our benefits? Doesn't get them. He leads a labor protest, an organized labor protest. He doesn't just say, I'm going to sue you, I want my money. It's a labor union. It's a nascent labor union, as we understand it. He said, did he not, that he disavowed... Didn't he disavow to the police that he was anti-government? He was simply saying, I was just agitating for workers' rights. The government accused him of being against the government. He said, no, I'm not against the government. And was beaten. I don't think one can interpret his statement that I'm not against the government as him disavowing that there's a political connotation to what he's doing here. Number one, he's trying to save his life, practically. He didn't want to get beaten up again. Yeah, I mean, if you admit you're against the government, then you're a traitor of treason, and then the parade of horribles follows. So I don't think he's disavowing that there's a political connotation to what he was protesting about. He's saying there's nothing inconsistent with being in favor of basic human rights and being against the government. The two don't have to be mutually exclusive. I think that's the only way to interpret his testimony. Because the immigration judge chose the wrong departure point. The immigration judge got to the wrong conclusion. The other thing, which you haven't mentioned yet, is this notion that because it's against the law in China to have a mass demonstration, this was therefore just a law enforcement? Correct, Your Honor. That is what the immigration judge in the government says. And as we know from history, in the 1930s, the Nazis passed all sorts of laws making it illegal to be Jewish. And just by happening to be Jewish, one was in violation of the law and was literally disturbing the peace of Germany. You violated the law in this country in certain periods. If two workers got together, that was a conspiracy and restraint of trade. Correct, Your Honor. And just because foreign governments have laws that criminalize the most basic of human rights such as asserting the right to compensation or work, we can't in our courts, and it doesn't make any sense under the government's proposition, under this court's case law, there's some of the cases cited in the record from the Sixth Circuit, which are consistent. You simply can't say that, oh, it's just low-level government prosecution in China for legitimate violations of Chinese law. I mean, it's legitimate in all sorts of countries to kill people for things that make no sense whatsoever. And if we import that regime here, and they start talking about disturbing the peace with sort of the American connotations of disturbing the peace, pretty soon there's no asylum law. And I think that's the fundamental problem here, Your Honors. I see I'm down to 20 seconds, so unless the Court has any further questions, I'll just save my 20 seconds. Thank you. Oh, you got 29. It goes up when you're over time. May it please the Court, David Wetmore for the Attorney General. I'd like to begin, actually, with something that Judge Fisher hit on, which I think is to clarify what issues are before the Court. The agency has never decided the issue of persecution. That issue is not before the Court today. The only issue before the Court is the nexus issue, whether there was a nexus between the alleged mistreatment and any sort of political opinion that Petitioner raised. Does it matter whether we think the persecution issue is a legal or factual question? Or would you say even if it's a legal question, it should still be remanded for the first decision by the Board? I think the latter, Your Honor. I think that would accord with this Court's precedence. If the agency has not addressed it in that way, it would need to be remanded. I'm sorry, what? That it would need to be remanded for consideration by the agency because it's never actually reached a conclusion on that issue. Even if we thought that the question was ultimately a de novo matter of law? We would assert that it is not a de novo matter. I know. And I know you've asserted that repeatedly, and I don't understand why. But if we thought otherwise, would you still argue for a remand? Well, we would stick by our position that that would be an incorrect finding, and we would leave it to the Court to decide, you know, the way in which to address it. All right, you're not answering the question.  What do you want to argue? Yes, Your Honor. Well, what we need to look at here is the complete lack of any evidence in the record of actually politicizing these actions. Well, but that's not true because they said to him, and nobody has said he's not credible or at least the BIA hasn't, that you're against the government and the society and so on. So at least there's that. There's also arguably somewhat more, but at least there's that. Well, I think what we need to take a look at here is what the actual persecutor had in mind or what they perceived or what sort of opinion was imputed to Mr. Hugh. Here we have a silent sit-in demonstration before a government building. They walk up, 100 people sit down. I venture to say if 100 random people from the street walked and sat in front of this courthouse and refused to move, that the marshals or somebody else may take action against them for trespass or disturbing the peace. Well, we'd bring them sandwiches. Very kind, Your Honor. But we're operating in a different milieu, a different, very different milieu for several reasons. One is that the government was the employer. The second is that they presumably take a somewhat different view, as we know, of peaceful protest. And thirdly, they said that they accused him of acting against the government and against the party because they tend to view this sort of activity, presumably, as not simply what it purports to be, but as a major breakdown of the way people are supposed to respect the government and the party. So you're walking away from this language entirely. Well, I think what we need to look at here is his articulated reason. He's articulated that. Why is it his articulated reason? The question is what the government was imputing to him. And I think those go hand-in-hand. What Petitioner asks this Court to say is that he's leading some sort of labor protest. There's nothing, absolutely nothing in the record to indicate that he was raising any allegations of government corruption in cases, the Baghdad Syrian case. They attempted to cite in their brief to sort of establish the proposition that if one is protesting against government corruption, even though it may in fact be somewhat of an economic issue, that it may qualify as a nexus between political opinion. Why wasn't that a labor dispute? They lost their jobs. They were entitled to certain compensation. And they weren't getting it, so they were protesting. Well, Your Honor, there's no evidence in the record that anybody from the government knew why these individuals were there. They were simply 100 individuals showed up and sat down. There's no evidence that they were carrying placards, that they were wearing factory outfits, union jackets. Well, what difference does it make if what they're, as Judge Berzon said, he repeatedly says that the police are saying that they are disturbing the order, acting against the government, acting against the party, gathering a crowd to cause trouble, disturbing the order of society? Yes, there were two of them. You can disturb the peace, but if you're acting against the government and you're acting against the party, why isn't that a political, why doesn't that add a putative political opinion on the part of the enforcers? Well, I think this goes back to actually a point you raised in the very beginning, is whether any sort of protest against an economic action taken by the... You just said that it wasn't necessarily against an economic action. You're running around in circles now. You said that they weren't doing it because it was against an economic action because they didn't know what it was about, the government. Well, the government, no, I was referring to the government outside the building when they actually appeared and sat down. Well, that's what they were arrested for, appearing and sitting down. Yes, they were arrested apparently for disturbing the peace, and the petitioner admitted that they did not seek, nor did they have, a permit to be able to... Could they probably have gotten a permit? It's unclear. That's not on the record. So what we're faced with is a situation where a number of individuals show up, they sit down, they admit that they have no contact with anybody inside the government building, they admit that they did nothing to politicize the demonstration, to convey any sort of political speech whatsoever to anybody in the area. Well, apparently it was apparent to the people who arrested them because they said so. Well, what they did say is, yes, you are violating the law, you're acting against the government, which someone who goes and breaks the law is acting against the government. They're acting against a law that is in place against holding unauthorized demonstrations. Now, whether that portion about acting against the party could be referred to, and I believe the agency correctly determined that this may be a colloquial expression that is used in China, certainly not an expression that would be used in this country, because thankfully we have more than one political party. Well, but they're the parties, the government. Absolutely. Absolutely, Your Honor. And there's no question that a law was broken here. He concedes that it was broken. He was taken into custody for breaking that law and asked to admit to breaking that law. And our position is that there's nothing inherently political in doing that unless he would have conveyed some form of political message to hold otherwise. Well, what do you, you know, you've got these events. They lose their jobs. They've got money coming to them, or they believe they have money coming to them. They engage in a peaceful demonstration in front of a building. They represent, in a sense, well, about 20 or 25 percent of all the workers there. Right? If anybody knew that that's why they were there. Well, you know, you'd have to be stupid not to know why they're not know why they're not understand why they're there. Well, there's simply no evidence in the record whatsoever that anybody knew. The evidence in the record is that they came, they sat silently, they made no announcements, there was no connection to any other activity or any other protest. Where were they in front of? Were they in front of the building of the entity that they were fired from? No, Your Honor. I believe the record shows that they were in front of a municipal building, which also was not the same building, we believe, that the two letters regarding Is there any country conditions material in the record? I'm sorry? Is there any country conditions material in the record? Regarding country conditions? Yes, there are some country conditions. Right. I have to say I have not looked at it, but I do read the newspapers, and I do know that there are many labor protests of this kind in China, and that they are rather harshly dealt with, and that they are regarded as impermissible not only in a political sense. Is there nothing in the record to indicate that? There is record in the country conditions, although we must look at the specific circumstances of this silent sitting in which no political opinion was communicated. If there was some additional action, if they had placards saying workers treated unfairly or, you know, victims of government corruption, it would be a very different question. So you think they were just arrested even though because they were sitting there and nobody had any idea why they were there? In the same way that if a number of individuals went to any Federal office building and sat down and refused to leave, they may, in fact, be subject to arrest. But they weren't in the building. They were outside. They were blocking the entrance, Your Honor. How do we know that? I'm sorry? How do we know that? I believe that was in the record. Where is that? I believe it's at page 54 and 55. I'm sorry, but I'm not seeing that. Read it to us. Yes. It's on page 55, Your Honor. Yeah. It's in line 11. Actually, it begins on line 10. It says, At 830 we arrived at the front door of the city government to sit there quietly as a protest. However, the front door of the city was closed tightly. They did not come out to see us and we did not go in. We sat quietly in front of the front gate. And where do you get the fact that they were blocking the entry from that? Well. It says we sat quietly in front of the front gate. Yes. Yeah. And I believe from – I think it would be a logical conclusion that by sitting in front of the front gate that it wasn't allowing individuals to pass. I guess you don't know a lot about protests. Okay. And labor demonstrations. And then our second contention is once we – if I may be permitted to continue briefly, Your Honor. I see my time is wrong. Our second contention is once he was actually in detention, there was no communication or no additional punishment of any kind meted out because he indicated that he was there for any political purpose. When we look at, you know, the case law between persecution and prosecution, we see a couple of instances where, yes, there are some laws in other countries that are – appear somewhat draconian to us. In this case, there was no indication that he was treated differently from anybody else or that his treatment was a pretext. So we have no infusion of – After the incarceration. This is after the incarceration. We had the – Or his arrest as well. But he did have to report to the neighborhood council, didn't he? That he did, Your Honor. Absolutely. Is it in the record that that's a standard punishment? There's no indication that it's not. That it was out of the ordinary or that he was singled out for his political opinion. The only thing that the record – we submit, suggest, or we submit that there's substantial evidence for the agency's decision is that this was a private economic matter, that he was arrested for violating Chinese law, disturbing the peace or trespassing, and that while unfortunate, you know, the treatment that he suffered, it was not on account of a protected ground. We urge that this Court deny the petition for review. Thank you. Your Honors, if I may briefly make – Yeah, we – they went over a couple of minutes. Thank you, Your Honor. Three points. I think starting with what happened to him after his arrest and detention and whether this is standard treatment for Chinese protesters. He's also been charged with treason. We should not lose sight of this a bit. That's hardly normal. Or if it is normal in China to charge people with treason for leading protests, it's not the type of normal behavior that we should be sanctioning. He was charged with treason? Yes. His wife – in the record, as the record indicates, he's spoken to his wife. The police have been there now and indicated that he has betrayed his country. You know, when the Chinese police tell you you've betrayed your country, those words encamp treason, I think, in any reasonable mind. Where is that in the record? I believe that's at 64, Your Honor. It's at page 64, lines 7 to 10. The question posed was, and did she, referring to his wife, tell you what would happen on a typical visit by the police? Answer, she said, no matter what, you cannot come back. They have already – us – that your charges has been changed. Now you are being charged for betraying your country. If you come back, you will surely die. Your Honor, a critical issue here also is this idea that because the protest was silent, it was not political. That simply doesn't make any sense. All sorts of protests can be silent and be quintessentially political. In fact, often silent protests or silent acts are the most political of acts. One can think of the 1968 Olympics when the athletes raised their hand. Yes, but their intent clearly was to do that. And the problem in this case is he is disavowing anti-government. He's saying the police didn't believe him. So his own purpose of being there was not, in his mind, what it appears we're relying on. It sounds like you're relying on imputed political opinion. And the evidence of what the authorities were reacting to and their statements about it are the ones that Judge Berzon pointed out, which he repeatedly says is anti-government, anti-party order of society. So you're saying that we have to interpret that as a political statement as opposed to what in this country would be called disturbing the peace. Correct, Your Honor. Even though you could have a demonstration out in front which was clearly political, but if they don't obey the ground rules for where they can do it, even if it's overtly political, it would be considered legitimate law enforcement. It would be not content-based. Our own regime, government structure would say under time, place, and manner, it's not content-based. So why isn't this a similar situation in China? Where's the evidence, in other words, that it was content-based, imputed content of political content? It's imputed political content by virtue of actually protesting in and of itself the first layer of our onion. In America, of course, we can protest. In China, you can't protest. You can't do it. That's what we're, I think, looking for. Where's the evidence of that? Is it the country conditions? Aside from what's going on, what we read in the newspaper, I mean, there's plenty of, they arrest a group of five people if they think they're Christians and they, you know, consider that anti-society and at least religious. But so where in the record do we look to find, in addition to what his characterization is, we're taking some kind of perhaps impermissible judicial notice? Well, I think you'd have to look at the country condition report, which we cited, but I do not believe is in the record. The court, the State Department reports, certainly something this court can and should judicially notice. It does it all the time. The court could also look to its jurisprudence in the Chinese persecution cases, which repeatedly cite in similar circumstances where you're talking about protests, country condition reports that identify the treatment of Chinese protesters in China for the act of protesting. So I think it's part of this court's jurisprudence already. We did make reference to the State Department report in our brief, I believe we cited the internet, but as I was going through the record, I actually didn't see that it had been submitted before the agency initially. The final point, and this comes back to I think your first question, Judge, and that is with respect to the rationale of sending it back, we do feel it's critical that because it's a question of law, this court adjudicate it. The government has conceded he's credible. On remand, if this court remands, that's the case. The BIA didn't find him not credible. Presumably, it would still be open to the BIA to find him not credible. Well, yes, which I think is improper. I think it's improper because the government has made the strategic election and that's the government's brief. The government's brief indicated he's credible for purposes here. Right, for purposes here, because it hasn't been decided. It's like any other, you know, alternative ruling or assumption ruling. The BIA said we're willing to assume he's credible because even if he is, he loses. If we remand, presumably, they can go back to the credibility question. Yes, and the concern would be then we're back to that question without the fair chance to sort of deal with the fact that these facts have been illuminated. They've been addressed. The government's conceded as before you that his testimony as a whole can be considered credible. Well, if it can be considered credible as a whole, why do they get a second bite at the apple? That's the problem we have, to now go and contend that, well, actually, we now feel, having lost on this issue in the Ninth Circuit, he lacks credibility, and the BIA will then try to compound the obviously flawed adverse credibility analysis of the immigration process. Well, presumably, they decided the first time to skip it because it's pretty weak credibility finding. So I wouldn't worry too much about that, but you are concerned about the persecution ruling, and do you have any case in which we have ever decided a persecution issue de novo in the first instance, ever? I don't believe so, Your Honor. I don't believe that. I mean, I think the Singh case, although it asserts it's de novo, it's an odd procedural context that that case came up in. I do think what, when you look at the court's jurisprudence. Which of the 7,000 Singh cases do you have in mind? Correct. Which Singh case? Oh, yeah, sorry. It's Singh v. Ilkert, I believe, I-L-T-A-G-R-T, 63 up third, Act 1506, where the court indicated that the application of established legal principles to undisputed law. And the court, in all the court's opinions, when it discusses a standard review, it talks about substantial evidence, but questions of law are de novo. I understand that, but I don't know that it follows that the BIA doesn't get to decide it first. Yeah, and I don't think this Court has said the BIA, as a matter of law, doesn't have the ability to decide it first. I think it's an open question, probably, and I think it's well within this Court's discretion, since the Court has de novo review of this, to simply decide it. I mean, when you're dealing with Article III judges, often you, you know, when review is de novo, you decide questions of law that may not have been passed upon in the first instance by the district judge. We submit that the same. Yeah, but this isn't a district judge. That's the difference. It's an agency determination. Correct, Your Honor, and I would submit that that makes it all the more compelling to not send it back, because an Article III judge is a judge in the constitutional branch of the government, as opposed to a political appointee. Unless the Court has any further questions, we would submit. Don't demean political appointees. By no means, Your Honor. I'll be honest with you. The defendant is a political appointee. Of course. I simply don't want to distinct you from the executive courts. I understand. You've got to be careful what you teach those students. Thank you. Well, well. We don't want you to be anti-government. Well, okay. Thank you, counsel. Thank you.
judges: Pregerson, Fisher, Berzon